CUNNINGHAM v. HEDGE et al.

(Supreme Court, Appellate Division, Fourth Department. December 16, 1896.)

1. CONTRACTS—PART PAYMENT AFTER DEFAULT—EXTENSION.
 A payment on a contract after default is not a valid consideration for an extension of time in which to pay the balance.
2. CONDITIONAL SALE—WAIVER OF FORFEITURE—DEMANDING PAYMENT.
 Where a seller receives a payment on a conditional sale after default, he waives forfeiture, and cannot retake the article sold without first demanding payment of the balance due.
3. NEW TRIAL—DISREGARDING INSTRUCTIONS.
 A new trial should be granted where a jury renders a verdict for a larger amount than is possible under the charge.

Appeal from trial term, Erie county.

Action by Sarah A. Cunningham against George S. Hedge and others to recover the value of a piano. From a judgment on a verdict for plaintiff, and from an order denying a motion for a new trial, defendants appeal. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Mackey & Draper, for appellants.
W. B. Simson, for respondent.

GREEN, J. On the 8th day of March, 1892, plaintiff purchased a piano of defendants, who were co-partners engaged in the sale of pianos at Buffalo, N. Y. At the time of such purchase, a conditional bill of sale was made, bearing date on that day, according to the terms of which plaintiff agreed to pay defendants for the

piano the sum of $350 in manner following: "By old piano, $75.00; April 10, 1892, $10.00; and quarterly thereafter, commencing June 10, 1892, at least $25.00,—each in advance, with interest, until the whole sum of said amount, with interest as aforesaid, should be paid." By the terms of the bill of sale it was further provided that the said piano should remain the property of the defendants until fully paid for; and in case of default in such payments the defendants to have the right to assume possession of said piano, and all of plaintiff's rights therein to thereupon cease. The piano was duly delivered and accepted. Payments were made from time to time on this purchase by the plaintiff, until she had paid $180 in cash, which, with the $75 allowed her for old piano, amounted to the sum of $255. The time within which payments were to be made expired on the 8th day of September, 1894, at which time a balance of $95 and interest were still unpaid. The plaintiff, still continuing in possession of the property, after such date, and on the 8th day of October, 1894, proceeded to the store of defendants in Buffalo, and there saw one of the members of defendants' firm. It was there agreed between the plaintiff and the defendants that, if plaintiff would then pay the sum of $10, the defendants would further extend the time for the payment of the balance. The plaintiff, relying upon such agreement, paid the defendants the sum of $10. There is no controversy between the parties as to what took place on the last-named date, except that plaintiff claims that the defendants were to extend the time of payment of the balance remaining unpaid upon the piano for the term of one year, and that she was to pay the sum of $25 thereof on the 4th day of January, 1895. It is claimed on behalf of defendants that they did agree to extend the time of payment upon the contract, upon the promise of the plaintiff that on the 1st day of January, 1895, she would pay the sum of $25; and that, if she paid that amount on that day, they would then see about whether or not they would give further extension. Nothing was done by either of the parties until January 4, 1895. On that day plaintiff's husband went to the defendants, ready to pay the sum of $25, which plaintiff claims was the amount which was to be paid on that day. One of the defendants informed the husband of the plaintiff that he was too late,—that he had sent to Tonawanda, the residence of this plaintiff, for the piano,—and refused to accept the payment. On the last-named day one of the defendants took the piano from the possession of the plaintiff, and the defendants have ever since retained the possession thereof. It is claimed on behalf of defendants that a demand for the balance unpaid upon the contract was made by the person who took the piano from the possession of the plaintiff at the time of taking the same. This is denied by the plaintiff and her witnesses, who were present at the time the piano was taken, and when it was claimed by the defendants that such demand was made. The court charged the jury that the agreement of October 8th, between the plaintiff and the defendants, was a valid agreement, and that the payment of the sum of $10 by the

plaintiff at that time was a valid consideration for such agreement; that if, by the terms of the agreement, the extension was only until the 1st day of January, as testified by the defendants, then, upon default being made in such payment on that day, the defendants had a right to take possession of the piano; but, if the agreement was that plaintiff should have to and including the 4th day of January, as claimed by her, in which to make such payment, and if upon that day she was ready to pay, and did offer to pay, to the defendants the amount which had been agreed to be paid by her on that day, then the defendants were trespassers in taking the piano when they did, and were liable to the plaintiff for the value thereof, less the amount unpaid, under and by the terms of the original contract; that the piano was hers during the existence of that contract, and that during its life the defendants had no right to take the piano from her possession. To this charge of the jury the defendants' counsel excepted, and asked the court to charge the jury that the payment by plaintiff and the acceptance by defendants of the $10 on the 8th day of October was only a recognition of the contract being at that time in force, and that they had the right at any time after that to demand the amount remaining unpaid upon this contract, and upon her failure or refusal to pay defendants would be entitled to the possession of the piano; and, further, that the plaintiff had only a special title in the piano, liable to be defeated by the demand of the amount unpaid, and the refusal or failure to pay the amount so remaining unpaid. The court refused to charge as requested, and the defendants duly excepted.

Although the defendants acceded to the arrangement made between the plaintiff and the defendants for an extension of time in the payment of the balance unpaid upon the original contract, and waited three months after the same before taking any action, and although they made no question during that period of time as to the validity of such agreement, they did raise a question as to its validity upon the trial of this action, and that question must be met and decided. It appears that the whole amount agreed to be paid by plaintiff under the original contract had become due previous to the $10 payment of October 8, 1894. There was a balance of $95 then due and unpaid. By the terms of the contract, the defendants were entitled, on the 9th day of September, 1894, to take possession of the property. The $10 paid by the plaintiff and received by the defendants were so paid and received, to be applied upon the original contract. The plaintiff had made default in payments which she had agreed to make. In making the payment of $10, she was simply fulfilling to that extent the obligation resting upon her. There was, therefore, no consideration for the agreement to extend the time of payment which was made between the parties on the last-named day. This, however, does not release these defendants from certain obligations resting upon them by reason of receiving a payment upon the contract price of this property after such payments were due. "Where, upon the condi-

tional sale of a chattel, it is agreed that the vendee is to have possession and pay the price within the time fixed, if, after the purchase money has become due, and remains unpaid, the vendee is still permitted to retain possession, and the vendor receives part payment, this is an assent by the latter to delay, and a waiver of any forfeiture, and a recognition of the right of the vendee to acquire title by payment of the residue of the purchase money, which right would continue until a request by the vendor for such payment, and a refusal by the vendee to make such payment." French v. Row, 77 Hun, 380, 28 N. Y. Supp. 849, and cases cited. These defendants, by accepting payment from the plaintiff after the vendee had made default in the payments contracted to be made, waived the forfeiture, and could not insist upon the same against this plaintiff until they had made a legal demand upon her of the entire amount remaining unpaid upon the contract, and her refusal to pay the same upon such demand. "A vendor who has waived a forfeiture for nonpayment by receiving partial payments from the vendee, after the time of payment prescribed in the contract, cannot suddenly stop short, and insist on a forfeiture for the nonpayment of the arrears, without previous notice of his intention to do so if the arrears are not paid." French v. Row, supra. It is claimed on behalf of the defendants that before repossessing themselves of the piano in question they made a demand of the exact amount unpaid upon the contract. This is denied by the plaintiff, who claims that the property was taken from her possession on the 4th day of January, 1895, without any demand having been made upon her, or opportunity having been given to her to pay the balance remaining unpaid upon the purchase price of the property. The plaintiff, after such taking, made a tender to the defendants of the amount then remaining unpaid under the original terms of the contract. If the plaintiff's contention is true, then the defendants made themselves liable in trover. If the defendants, however, after receiving the payment of October 8, 1894, made a legal demand upon this plaintiff for the balance remaining unpaid, and gave the plaintiff opportunity to pay such arrears, they were justified in repossessing themselves of this property. These were questions of fact which should have been submitted to the jury upon the trial of this action. Upon their determination rests the right of plaintiff to recover, and the liability, or freedom from liability, of these defendants. The refusal of the court to submit those questions to the jury upon request of the defendants was error, which calls for the reversal of this judgment.

As there must be a new trial, another question raised by defendants should be examined. One of the grounds of defendants' motion for a new trial was that the verdict was contrary to the evidence and to the charge of the court. The contract price of the piano was $350. The plaintiff had used the piano for nearly three years at the time the same was taken by defendants. During that period it had several times been moved from one house to another. The plaintiff testified that at the time it was taken from her by

defendants it was worth $350. Her attorney testified that shortly after defendants took the piano into their possession, one of them stated to him that "the piano is in as good condition to-day as it was the day it first went out of the store. He stated to me it was worth three hundred and fifty dollars then, just as much as it was the day when he took it from the store. George F. Hedge told me that day that piano was worth three hundred and fifty dollars, because I gave him to understand I was advancing this money for those people, and he told me then it was worth three hundred and fifty dollars. I swear Mr. Hedge told me that time that piano was worth three hundred and fifty dollars." This was all the evidence on the question of the value of the piano given by plaintiff. The defendants denied making the statements attributed to them by plaintiff's attorney, and gave evidence tending to show that the value of the piano when taken by them was not to exceed $125. It appears uncontradicted that, intervening the taking of the piano by defendants and the date of the conversation in which the attorney testifies the statements as to its value were made by the defendants, something like $30 had been expended in repairing the instrument. Defendants further testified that it was marred, bruised, and generally in bad condition when so taken by them. The court charged the jury upon the question of damages as follows: "If you find the plaintiff is entitled to recover, ascertain first the value of the piano on the 4th day of January, 1895. You may add interest to that sum to this date. Then you may deduct from that $132.27." The last-named sum is the amount unpaid on contract and interest to the date of the trial. The plaintiff assented to that deduction as charged, and of that charge the defendants could not complain. The jury, however, ignored the directions of the court. The purchase price of the piano, with interest to the day of trial, amounted to the sum of $373.33. The deduction to be made under the charge of the court was $132.27. The largest verdict, therefore, which the jury, under the evidence and the charge, could render, was $241.06. The verdict actually rendered by the jury was $255, showing conclusively that their verdict was based solely on the amount allowed plaintiff by the defendants for the old piano, $75, and the amount paid in cash by plaintiff upon the contract, $180. The jury therefore rendered a verdict contrary to the evidence, and excessive in amount. It is perfectly apparent, too, that this piano, after three years of service, was not then as valuable as the day it was purchased by the plaintiff. The defendants would not allow the plaintiff, or her representative, to see the piano after the same had been taken by defendants from her possession, and, consequently, it was somewhat difficult for the plaintiff to obtain evidence as to its condition and value at the time defendants repossessed themselves of the same; but it appears that evidence, other than that offered at the trial, as to its condition and value, was obtainable, and could have been produced. However that may be, it is apparent that the verdict rendered was contrary to the evidence, and excessive.

Judgment and order reversed, and new trial ordered, with costs to abide the event.

HARDIN, P. J., and FOLLETT and ADAMS, JJ., concur. WARD, J., concurs on the ground that the damages are excessive under the charge of the court.